## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSHUA I. PAYNE,<br>    Plaintiff | : | No. 1:23cv532 |
| | : | |
| | : | (Judge Munley) |
| | : | |
| v. | : | (Chief Magistrate Judge Bloom) |
| | : | |
| M. GOURLEY, et al.<br>    Defendants | : | |

## MEMORANDUM

Plaintiff Joshua I. Payne commenced this action pursuant to 42 U.S.C. § 1983 on March 28, 2023. (Doc. 1, Compl.).  Payne is presently incarcerated at State Correctional Institution, Camp Hill ("SCI–Camp Hill") and proceeds *pro se*.

This matter was assigned to Chief Magistrate Judge Daryl F. Bloom for pretrial case management and to issue Reports and Recommendations ("R&Rs") regarding any dispositive motions.  On July 31, 2024, Defendants D. Benner, R. Evans, M. Gourley, L. Kendall, L. Newsome, W. Nicklow, B. Ritchey, and Wimer filed a motion for summary judgment. (Doc. 38)  On January 23, 2025, Chief Magistrate Judge Bloom issued an R&R recommending that summary judgment be entered in favor of the defendants due to Payne's failure to exhaust administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (Doc. 47, p. 6-11).  Specifically, the R&R relies upon Talley v. Clark, 111 F.4th 255 (3d Cir. 2024), which held that prisoners

must pursue requests for extensions of time to file grievances under Pennsylvania Department of Corrections' ("DOC") policies when impediments to filing grievances are removed. Id. at 264–65.

Before the court is an objection to that R&R filed by Payne. (Doc. 48). In his objection, Payne contends that Talley does not apply to the facts of his case. Defendants responded to the objection with a brief in opposition. Accordingly, Payne's objection is ripe for disposition.

**Background**

In his amended complaint, Payne alleges that he requires mental health treatment. (Doc. 21, Am. Compl. ¶ 14). He is classified with a D-stability code by the DOC. (Id.) Plaintiff also suffers from diabetes. (Id. ¶ 29).

Due to violating DOC regulations, Payne received discipline, including placement in the Diversionary Treatment Unit ("DTU") within the Restricted Housing Unit ("RHU") at SCI-Camp Hill. (Id., ¶¶ 15-17). Specifically, per Payne, he attacked corrections officers ("COs") due to a mental health episode. (Doc. 39-2, Def. Ex. 2, DC-804, Official Inmate Grievance # 1009466, 12/03/2022, ECF p. 137). According to Payne, the DOC sanctions included placement in the DTU for a period of 230 days beginning on June 10, 2022. (Id.)

Payne's amended complaint raises three Section 1983 claims relative to

his placement in the DTU:

1) a Fourteenth Amendment claim based on intentional disclosure and
   discussion of his mental health status by Defendant Wimer, an SCI-
   Camp Hill psychologist, which occurred while Wimer treated the plaintiff
   at his cell door;

2) an Eighth Amendment claim for the denial of meals, showers, yard time,
   and group sessions; and

3) an Eighth Amendment claim for being placed in a cell smeared with
   fecal matter.

(See Doc. 29, Order 01/02/2024)(adopting previous R&R regarding defendants'
motions to dismiss). [1]

Specific to this action, Payne asserts that SCI-Camp Hill's Program Review

Committee ("PRC") displayed deliberate indifference to these issues and failed to

intervene.   The court reviews the background of these claims separately.

## 1. Disclosure of Medical Information

According to Payne, on June 15, 2022, Defendant Wimer visited the door

of the plaintiff's cell to provide mental health treatment. (See Doc. 39-1, Def. Ex.

---

[1] As to his second and third claims, plaintiff alleges that a non-party, Sgt. Timpe, and COs on
Sgt. Timpe's shift violated his Eighth Amendment rights. Payne has filed other lawsuits related
to his alleged treatment by DOC staff while housed in the DTU at SCI-Camp Hill.  On June 29,
2023, the Honorable Robert D. Mariani adopted portions of an R&R, which dismissed First
Amendment retaliation claims against Sgt. Timpe. Payne v. Ritchey, No. 1:22-CV-1517, 2023
WL 4269768, at *2 (M.D. Pa. June 29, 2023).  On August 12, 2024, in a separate action, the
undersigned adopted an R&R and dismissed numerous claims, except a separate First
Amendment retaliation claim against Sgt. Timpe. Payne v. Miller, No. 1:23CV269, 2024 WL
3793900, at *1 (M.D. Pa. Aug. 12, 2024).

1, Pl. Dep. 9:7–10:5). Payne testified that inmates in neighboring cells overheard disclosure of the plaintiff's medical information. (Id. 10:24–11:6).   In his deposition, Payne recalled telling Wimer to stop talking about his medical history and requesting to speak to another psychologist. (Id. 13:16-24).   In his amended complaint, Payne claims that Wimer discussed his mental health history, including the details of his medications, his past suicide attempts, and sensitive information about ongoing symptoms within earshot of other inmates. (Doc. 21, Am. Compl. ¶¶ 20, 24).

Payne avers that he attempted to report Wimer's conduct to the Program Review Committee ("PRC"), which consisted of Defendants Gourley, Kendall, Miller, Nicklow, Newsome, and Ritchey. (Id. ¶¶ 21, 23).   Payne contends that the PRC did nothing to help him. (Id.)   Instead, unidentified PRC members told him "to stop being a rat[.]" (Id. ¶ 23).   Payne testified that despite multiple requests to PRC members, Wimer continued to discuss plaintiff's mental health at the door of his cell in the DTU. (Doc. 39-1, Def. Ex. 1, Pl. Dep. 15:19)

As a result, Payne alleges that other inmates and unnamed COs tormented him about his mental health conditions. (Doc. 21, Am. Compl. ¶¶ 24-25).   Payne alleges that daily torment from inmates and COs caused him anguish and that, on or about August 25, 2022, he considered committing suicide. (Id. ¶ 26).   This

4

resulted in him being placed "in the POC[,]" or psychiatric observation cell. (Id.) The actual time that Payne spent in the psychiatric observation cell is not otherwise reflected in the record.

### 2. Denial of Meals, Showers, Yard Time, and Group Sessions

Payne also contends in his amended complaint that from October 27, 2022 until December 10, 2022, non-party Sgt. Timpe denied him meals. (Id. ¶¶ 27-28). Plaintiff alleges that he needed to eat after taking insulin to treat his diabetes. (Id. ¶ 29). In his deposition, Payne testified that Timpe denied him meals because the plaintiff did not follow the rules of the DTU, that is, the plaintiff did not stand in the back of his cell with his light on and his bed made. (Doc. 39-1, Def. Ex. 1, Pl. Dep. 16:13–17:13). Per plaintiff, each time that Timpe worked, or four (4) to five (5) days out of the week, he did not receive breakfast or lunch. (Id. 19:25–20:14).

Per Payne, he told the members of his PRC team about being denied meals, but they "basically told [him] to suck it up and stop filing lawsuits[.]" (Id. 21:4-7).

Furthermore, Payne alleges that Sgt. Timpe denied him showers from October 27, 2022 until December 10, 2022. (Doc. 21, Am. Compl. ¶¶ 27-28). According to Payne's testimony, instead of receiving daily showers, he received only two (2) or three (3) each week. (Doc. 39-1, Def. Ex. 1, Pl. Dep. 21:8–23:9).

Similarly, Payne avers that Sgt. Timpe denied him yard time from October 27, 2022 until December 10, 2022. (Doc. 21, Am. Compl. ¶¶ 27-28). Instead of receiving five (5) periods of yard time each week, the plaintiff received one (1) or two (2) periods instead. (Doc. 39-1, Def. Ex. 1, Pl. Dep. 23:7–25:5). Plaintiff testififed that he complained about reduced opportunities for showers and yard time to the PRC defendants on at least five (5) occasions. (Id.)

Payne also contends that Timpe denied him access to group sessions, which ostensibly were part of his mental health treatment. Neither Payne's amended complaint nor his deposition delves into the details of these alleged denials.

### 3. Cell Conditions

Furthermore, Payne alleges in his amended complaint that authorities moved him from Cell 12 to Cell 8 on or about November 13, 2022. (Doc. 21, Am. Compl. ¶ 31). Per Payne, Cell 8 had feces smeared all over the walls, urine on the floor, and dirt everywhere. (Doc. 39-1, Def. Ex. 1, Pl. Dep. 25:15-21). Payne testified that the RHU/DTU's second shift staff removed him from Cell 8, but that unit's first shift staff placed him back in these conditions without it being cleaned. (Id. 27:22-15, 30:14-31:7). Payne testified that he then had to clean up the cell himself using his own rag and soap. (Id. 28:24-29:15). As a result, plaintiff had to

6

use his socks as washcloths while showering. (Id. 29:16-23). Additionally, Payne alleges that, while in Cell 8, COs banged on his cell door throughout the day and the night and did so on purpose to wake him up when the plaintiff attempted to sleep. (Doc. 21, Am. Compl. ¶¶ 33-34).

According to Payne, he also attempted to raise the issues of being denied meals, showers, yard time, and group sessions and the issues of his cell conditions with the PRC defendants, i.e., Defendants Gourley, Kendall, Miller, Nicklow, Newsome, and Ritchey. (Id. ¶ 35). Per Payne, these defendants told him that they did not have the power to move plaintiff from his current cell. (Id. ¶ 36). They also allegedly told him, "if [you] can't stand the fire[,] then don't be assaulting staff anymore. Because when you do[,] we always get you back some way somehow." (Id. ¶ 36). Payne alleges this treatment at SCI-Camp Hill caused his mental health to further deteriorate, trigging suicidal ideations and increased reliance on psychiatric medications to address those symptoms. (Id. ¶ 37).

From Payne's allegations and his deposition testimony, it appears that the above issues no longer occurred after DOC officials transferred Payne back into SCI-Camp Hill's general population on December 23, 2022. (See Doc. 39-1, Def. Ex. 1, Pl. Dep. 28:19-20).

7

### 4. Records of Payne's Prison Grievances

In their answer to the amended complaint, defendants raised an affirmative defense that plaintiff failed to exhaust his administrative remedies regarding the above claims. (Doc. 30, ECF p. 9). Following a period of discovery, the defendants filed a motion for summary judgment. (Doc. 38). Defendants attached records of twenty-one (21) separate grievances filed by the plaintiff from June 15, 2022, the date Defendant Wimer allegedly discussed Payne's mental health at his cell door, to January 31, 2023, or more than one month following plaintiff's placement back in the general population. (Docs. 39-2, 39-3).

Defendants use these grievance records in their brief in support to argue that Payne did not exhaust administrative remedies as required by the PLRA. (Doc. 39, Def. Br. in Supp. at 9-11). Based on Payne's objection and the court's *de novo* review of the summary judgment record, four (4) grievances related to the above issues were provided by the defendants as follows: 1) denial of yard time on July 18, 2022, (Doc. 32-2, Def. Ex. 2, DC-804, Grievance # 989822, 07/18/2022, ECF p. 56); 2) denial of meals, showers, and exercise time when the plaintiff did not follow RHU/DTU rules, (id. Grievance # 996733, 09/05/2022, ECF p. 95); 3) psychology visits being conducted at the cell door, (id., Grievance # 1004149, 10/26/2022, ECF p. 113); and 4) retaliation by Sgt. Timpe in the form of

8

being denied meals, showers, groups, and meals and being moved from Cell 12 to Cell 8 (id., Grievance # 1009367, 11/30/2022, ECF p. 134).

In his brief in opposition to the motion, Payne contends that administrative remedies were not available to him, that is, prison staff denied him access to the grievance box at the time the missing grievances were written and that certain unnamed officers would not submit them on his behalf. (Doc. 41, Pl. Br. in Opp. at ECF p. 4-5). In support of this argument, Payne attaches two grievance forms related to the events complained of in this lawsuit. (Doc. 41-1 at ECF p. 38-44). One grievance form dated November 10, 2022, addresses denials of showers, yard time, and group sessions by Sgt. Timpe beginning on October 27, 2022. (Id., ECF p. 38). Another grievance form dated November 30, 2022 addresses the conditions of Cell 8 in the RHU/DTU. (Id. at 42). Additionally, Payne attaches two requests to staff member forms regarding the disposition of those grievances. (Doc. 41-1 at ECF p. 38-44). For ease of disposition, but without making specific findings of fact, the court will refer to these two grievances in the summary judgment record provided by Payne as the "missing grievances." Construing his brief in opposition liberally,

For additional background, Payne also filed a response to the defendants' statement of material facts ("SOF"). (Doc. 42). Payne labeled it a

9

"counterstatement of undisputed material facts." (Id.)  Understanding that Payne

proceeds *pro se* from a state correctional institution, the court construes both his

response to defendant's SOF liberally. See Erickson v. Pardus, 551 U.S. 89, 94

(2007).  Even with liberal construction, it appears that Payne answered the first

eight (8) paragraphs of defendant's SOF, admitting the facts in Paragraphs 1-2

and 4-8. (Doc. 42, ECF p. 1).  He denied Paragraph 3 and provided a

controverted interpretation of a DOC administrative regulation. (Id.)  Otherwise,

Payne did not respond to the remaining paragraphs. (Id. at ECF 2-3).  Rather, his

response to defendants' SOF challenges the relevance of certain grievances

provided by the defendants in Paragraph 9. (Id.) The remaining six (6)

paragraphs provide averments that he personally handed the missing grievances

to unnamed COs and did not receive a pink-colored action return copy from the

Facility Grievance Coordinator regarding the November 10, 2022 missing

grievance. (Id.)

In response to Payne's filings opposing summary judgment, defendants

filed a reply brief, citing Talley.  Defendants argue in their reply brief that, even

when crediting Payne's arguments for summary judgment purposes, Payne

cannot demonstrate that he requested an extension of time to grieve the issues

that he raised in this lawsuit once his administrative remedies became available to him again. (Doc. 45 at 1-9).

Faced with these cat-and-mouse arguments from both sides, Chief Magistrate Judge Bloom concluded (for the purposes of resolving the motion) that between June 15, 2022 and December 23, 2022, administrative remedies were unavailable to Payne. (Doc. 47, R&R at 10). The magistrate judge also concluded that Payne did not request an extension of time to file his grievances once he was released into the general population. (Id. at 11). Applying Talley to these facts, the R&R recommends granting summary judgment.

Payne then filed an objection to the R&R. (Doc. 48). Diverging from his brief in opposition, Payne's objection argues that "he is not asserting that the correctional staff did not submit these two additional grievances." (Id. at p. 2). Rather he asserts that, "the facility grievance coordinator failed to process his two grievances and when he submitted the two additional request[s] to staff member [forms] to the same person that failed to process these other two grievances, she…made the remedies 'unavailable' to him." (Id.)

Defendants counter the objection with arguments asserting that Payne has changed his legal theory on the fly in response to the R&R and that the court should not condone such gamesmanship. (Doc. 49 at 4).

11

Following a *de novo* review of the defendants' motion for summary judgment, the record supplied by the parties, and their ever-evolving arguments, the court will adopt the conclusions of the R&R but on differing grounds. Defendant's motion for summary judgment will be granted due to Payne's failure to exhaust his administrative remedies. As for Chief Magistrate Judge Bloom's analysis, it remains sound given Payne's initial arguments against summary judgment. Thus, the court will adopt the R&R's considerations of <u>Talley</u> for Payne's claim arising from his cell conditions as an alternative to the primary disposition of that claim.

## Jurisdiction

As this case is brought pursuant to Section 1983 for constitutional violations, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## Legal Standards

### 1. Reports and Recommendations

When a party files objections to an R&R on a dispositive motion, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3); <u>see also</u>

Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir.1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

## 2. Motions for Summary Judgment

The R&R addresses a motion for summary judgment filed by the defendants. Granting summary judgment is proper " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' " See Knabe v. Boury Corp., 114 F.3d 407, 410 n. 4 (3d Cir.1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir.1990). The

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. <u>Anderson</u>, 477 U.S. at 248.  A fact is material when it might affect the outcome of the suit under the governing law. <u>Id.</u>  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. <u>Id.</u> at 324.

The fact that the non-moving party in this case is proceeding *pro se* does not relieve him of the obligation under Rule 56 to produce evidence that raises a genuine issue of material fact. <u>See</u> <u>Mala v. Crown Bay Marina, Inc.</u>, 704 F.3d 239, 245 (3d Cir. 2013) ("At the end of the day, [*pro se* litigants] cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")(citation omitted).

**Analysis**

Defendants seek summary judgment based upon plaintiff's failure to exhaust his administrative remedies.  "The PLRA states that no action shall be brought with respect to prison conditions under § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Shifflett v. Korszniak, 934 F.3d 356, 364 (2019)(quoting 42 U.S.C. § 1997e(a)) (internal quotation marks and brackets removed).

Mandatory exhaustion statutes like the PLRA foreclose judicial discretion. Ross v. Blake, 578 U.S. 632, 639 (2016).  As explained, "all inmates **must** […] exhaust all available remedies[,]" with no exceptions for "special circumstances" or any judge-made, discretionary exclusions.  See id. at 641-42 (emphasis added); see also Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies."  Ross, 578 U.S. at 638.  An administrative remedy is "available" when it is "capable of use for the accomplishment of a purpose" which "is accessible or

15

may be obtained." Id. at 642 (quoting Booth v. Churner, 532 U.S. 731, 737-38 (2001)).

Administrative remedies are unavailable in three instances.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." Id. at 643 (citation omitted).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. at 643-44.  As further stated, "[w]hen an administrative process is susceptible of multiple reasonable interpretations … the inmate should err on the side of exhaustion[,] [b]ut when a remedy is … essentially 'unknowable' – so that no ordinary prisoner can make sense of what it demands – then it is also unavailable." Id. at 644 (citations omitted).  Administrative remedies are also unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id.

Additionally, "[t]he PLRA exhaustion requirement requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing

16

some orderly structure on the course of its proceedings." Id. at 90–91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93 (quoting Porter v. Nussle, 534 U.S. 516, 525 (2002)).

Under the PLRA, inmates must comply with the rules and procedures of prison administrative systems and these requirements are drawn from the prison policies in question rather than from any free-standing federal law. Shifflett, 934 F.3d at 364 (citations omitted). In cases such as this, the exhaustion requirement mandates that the inmate proceed through DOC grievance procedures. The DOC's "Inmate Grievance System" is governed by Administrative Directive 804 ("DC-ADM 804"). (See Doc. 39-1, Def. Exh. 1, T. Heist Decl. Attach. A, ECF p. 12-46).

DC-ADM 804 requires a prisoner to present his grievance to the Facility Grievance Coordinator for "initial review" within fifteen (15) days after the events leading to the grievance. (See id. at ECF p. 16). Per this policy, "the response shall be provided to the inmate" from the designated Grievance Officer "within 15 working days from the date the grievance was entered into the Automated Inmate Grievance Tracking System[.]" (Id. at ECF p. 16). An inmate may appeal

17

an initial review response/rejection to the Facility Manager within fifteen (15) days from the date of the initial review/rejection. (See id. at ECF p. 26).  To fully exhaust, an inmate who is dissatisfied with the disposition of an appeal to the Facility Manager must then file an "appeal to final review" to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Id. at ECF p. 29-31).

Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. See Small v. Camden Cnty., 728 F.3d. 265, 268 (3d Cir. 2013); see also Drippe v. Tobelinski, 604 F.3d 778, 781 (3d Cir. 2010).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.' " Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

After a de novo review, Payne did not respond to the motion for summary judgment with evidence demonstrating that administrative remedies were unavailable to him for: 1) his Fourteenth Amendment claim based on intentional disclosure and discussion of his mental health status by Defendant Wimer; and 2) his Eighth Amendment claim for the denial of meals, showers, yard time, and

group sessions. Furthermore, he has not provided evidence to demonstrate that there are genuine issues of material fact regarding his administrative exhaustion of those claims.

As for his Eighth Amendment claim for being subjected to a RHU/DTU cell with feces on the walls and urine on the floor, Payne has provided evidence of a November 30, 2022 "missing grievance" that, per plaintiff, was either not placed in the appropriate box by a CO or ignored by SCI-Camp Hill's Facility Grievance Coordinator. Nonetheless, Payne has not addressed a grievance also dated November 30, 2022 referencing his transfer into Cell 8 that was accepted, processed, and denied without an appeal by the plaintiff. Accordingly, Payne has not demonstrated a genuine issue of material fact regarding his failure to exhaust and the defendants' motion for summary judgment will also be granted regarding the plaintiff's cell conditions claims.

For clarity, the court will review the summary judgment record regarding the three separate claims referenced above.

## 1. Disclosure of Medical Information

Payne contends that Defendant Wimer improperly discussed his mental health treatment at his cell door and that the PRC defendants did not address his complaints about that concern. The summary judgment record reflects that

Payne filed a grievance regarding this issue on October 26, 2022. (Doc. 39-2, Grievance # 1004149, 10/26/2022, ECF p. 113).  On October 28, 2022, Facility Grievance Coordinator Tonya Heist denied Grievance # 1004149, noting that: 1) Payne arrived at SCI-Camp Hill on June 7, 2022 and that his grievance was not submitted within fifteen (15) working days of the events upon which his claims were based; and 2) grievances based upon different events were not presented separately. (Id., ECF p. 115).

In support of summary judgment and in accordance with the Rules of Court for the Middle District of Pennsylvania ("Local Rules"), defendants filed the above referenced SOF. (Doc. 40).  Paragraphs 45-46 of the SOF concern Grievance # 1004149. (Id. ¶¶ 45-46).  Paragraph 46 avers that Payne did not appeal Grievance # 1004149 to the Facility Manager or to SOIGA. Payne's answer to the SOF does not respond to Paragraph 46. (See Doc. 42).  Rather, his answer to the SOF references the two missing grievances concerning denial of meals, showers, yard time and group sessions and the conditions of his cell. (Id. ¶¶ 9-14).

Accordingly, the court deems the facts relative to Grievance # 1004149 admitted and summary judgment will be granted to the defendants on this claim. Payne did not appeal this grievance determination by the Facility Grievance

Coordinator to the Facility Manager or to SOIGA.  Failure to follow the full

administrative review process under DC-ADM 804 means that Payne failed to

properly exhaust this claim under the PLRA.  Prater v. Dep't of Corr., 76 F.4th

184, 204 (3d Cir. 2023).  Moreover, Payne has not otherwise demonstrated that

he attempted to grieve this specific issue earlier or later than the date of

Grievance # 1004149 or that such a grievance form went missing.

### 2. Denial of Meals, Showers, Yard Time, and Group Sessions

Payne also contends that from October 27, 2022 until December 10, 2022,

non-party Sgt. Timpe denied him meals, showers, yard time, and group sessions

while the plaintiff was housed in the RHU/DTU and that the PRC defendants did

not address his complaints about that concern.  The record reflects Payne filed a

grievance regarding this issue on November 30, 2022. (Doc. 39-2, Grievance #

1009367, 11/30/2022, ECF p. 134).

Specifically, Payne wrote in Grievance # 1009367:

This Grievance is against SGt. Timple and yet to be Identified RHU / DTU Correctional Officers. Since 10-29-22 I have been Retaliated against by SGt. Timple and his fellow Correctional officers in the form of being denied Yard, Showers ~~and~~ Groups and Meals when ever this SGt. is working I am denied these things. Also I was subjected to a retaliatory Cell moved when I was removed from Cell 12 on EA to Cell 8 after an another was removed from this Cell and placed in Cell 2 the same day. I was moved from Cell 8 by 2-10 Staff only to be placed back in Cell 8 the next day. Since I have been placed back in Cell 8 I have been subjected to denial of Showers, Meals, Sleep, Group and Yard. All because I have filed an lawsuit against SGt. Timple docketed at Payne V. Kitchey etal 1:23CV 1519. All of these acts are retaliatory in nature and Violates

**B. List actions taken and staff you have contacted, before submitting this grievance.**
MY 1st, 8th, 14th, ADA, MHPA and RA. I Seek to received Compensatory damages relief. I have notified PRC at MY weekly review but nothing has been done to stop these on going Violations.

(Id.)

On December 5, 2022, Heist, the Facility Grievance Coordinator, denied Grievance # 1009367 noting that the grievance was not filed within fifteen (15) working days of the events upon which his claims were based. (Id., ECF p. 134).

Paragraphs 56-57 of defendants' SOF concern Grievance # 1009367. (Id. ¶¶ 45-46). Paragraph 57 indicates that Payne did not appeal Grievance # 1009367 to the Facility Manager or to SOIGA. Payne's answer to the SOF does not respond to Paragraph 57. (See Doc. 42). Rather, his answer to the SOF references the two missing grievance forms. (Id. ¶¶ 9-14). Accordingly, the court deems the facts relative to Grievance # 1009367 admitted. Payne did not appeal

22

this grievance determination by the Facility Grievance Coordinator to the Facility Manager or to SOIGA.

Additionally, one "missing grievance" provided by Payne in response to summary judgment, dated November 10, 2022, is similar in substance to the later-dated Grievance #1009367, that is, it references denials of meals, showers, yards, and group time by Sgt. Timpe and failures of the PRC defendants to respond. (Doc. 41-1, ECF p. 38). Payne has responded to summary judgment with evidence that he attempted to grieve these issues earlier and was thwarted, but this does not demonstrate a genuine issue of material fact. Rather, Payne has demonstrated only that: 1) he filed a later grievance on the same issues that was received by DOC staff; 2) the Facility Grievance Coordinator responded that the grievance was time-barred under DC-ADM 804; and 3) Payne did not appeal that determination with the evidence he advances now. Consequently, Payne did not exhaust administrative remedies regarding that claim. Summary judgment will thus be granted in favor of the defendants on Payne's Eighth Amendment claim for denial of meals, showers, yard time, and group sessions.

### 3. Cell Conditions

As referenced above, Grievance # 1009367 concerns Payne's transfer from Cell 12 to Cell 8 and is dated November 30, 2022. Grievance # 1009367

does not reference feces or urine being present in Cell 8. In opposing summary judgment, Payne has proffered a "missing grievance" also dated November 30, 2022, which specifically delves into the conditions of that cell and the denial of cleaning supplies. (Doc. 41-1, ECF p. 42). As indicated above, Payne does not contest the existence of Grievance # 1009367 concerning his transfer into Cell 8. He did not appeal the outcome of that grievance.

Even with consideration of the November 30, 2022 "missing grievance," however, Payne has only demonstrated that: 1) he filed a grievance on the same day concerning his cell placement that was received by DOC staff; 2) the Facility Grievance Coordinator responded that the grievance was time-barred under DC-ADM 804; and 3) Payne did not appeal that determination to the Facility Manager and then to SOIGA with the evidence he advances now, that is, he ostensibly filed another grievance with details making the claim timely under DC-ADM 804 and that either a CO did not properly send it along for him or the Facility Grievance Coordinator did not address it. As such, Payne did not properly exhaust administrative remedies regarding his cell conditions claim and summary judgment will be granted.

### 4. The Magistrate Judge's Application of <u>Talley</u>

As an alternative, the court will adopt Chief Magistrate Judge Bloom's analysis regarding <u>Talley</u> to Payne's cell conditions claim. <u>Talley</u> references the "15 working days" deadline referenced by Heist, the Facility Grievance Coordinator in her responses to Grievance # 1004149 and Grievance # 1009367. Pursuant to DC-ADM 804 Section 1.C.2:

> A time extension for filing a grievance will be considered on a case-by-case basis. The inmate must notify the Facility Grievance Coordinator/designee of the reason for the delay. The Facility Grievance Coordinator/designee will consider the reason given and also consider if the delay was caused by: ...
>
> e. any other reason the Facility Grievance Coordinator/designee deems appropriate.
>
> **NOTE:** If it is determined that a delay was caused by a circumstance listed above, a reasonable extension of time for filing shall be permitted.

(<u>See</u> Doc. 39-1, Def. Exh. 1, T. Heist Decl. Attach. A, ECF p. 20).

"Requiring Pennsylvania prisoners to seek an extension to file a grievance pursuant to [DC-ADM 804 Section] 1.C.2 serves the important goals of exhaustion." <u>Talley</u>, 111 F.4th at 263. "A prisoner must request permission to file an untimely grievance under [this section] just as he must pursue the grievance itself." <u>Id.</u>

Payne has averred that he experienced exacerbated symptoms of his mental health conditions while serving out his sanctions in the RHU/DTU due to the conditions of that form of detention. That placement ended approximately twenty-four (24) days after Grievance # 1009367 was filed and after Payne attempted to file the November 30, 2022 "missing grievance" with more details about his cell conditions and with details making that grievance timely on its face. On December 23, 2022, Payne returned to the general population and out of an environment where, per the plaintiff, inmates and COs made remarks about his mental health and a whole shift of COs denied him necessities and moved him into a squalid cell. Whether Payne was impeded from his full administrative remedies by DOC staff or by his own mental health symptoms made worse by the conditions, the plaintiff did not resubmit the November 30, 2022 "missing grievance" with a request for an extension of time once he departed the RHU/DTU. Pursuant to DC-ADM 804 Section 1.C.2., Payne had the opportunity to request an extension and explain his personally unique circumstances. He failed to do so and filed this action instead. Accordingly, summary judgment would also be warranted on Payne's cell conditions claim because he did not take action once any impediments to filing grievances were removed. See Talley, 111 F.4th at 264–65.

26

**Conclusion**

For the reasons set forth above, the conclusions of the R&R (Doc. 47) will be adopted. Defendants' motion for summary judgment (Doc. 38) will be granted on other grounds. However, the analysis of the R&R regarding the application of Talley to this case will be adopted as an alternative basis for granting the motion for summary judgment on the plaintiff's cell conditions claim. The Clerk of Court will be directed to close this case. An appropriate order follows.

Date: 3/26/25

JUDGE JULIA K. MUNLEY
United States District Court

27